## CHESSIN v. KLAHN (two cases).

(Court of Appeals of District of Columbia. Submitted May 9, 1922. Decided June 5, 1922. Motion for Rehearing or Modification of Judgment Denied June 21, 1922.)

Nos. 1488, 1489.

1. **Patents ⊜91(1)—Junior party has burden of proof in interference proceeding.**

In interference proceeding, the junior applicant has the burden of proof.

2. **Patents ⊜106(2)—Claims in interference held to read on application of senior party filed before junior's conception.**

The claims in an interference proceeding involving a gyroscope compass, the novel feature of which was means for transmitting the effect of the earth's rotation to the gyroscope, *held* to read on the disclosure made by the senior party's application before the junior party had undertaken any work along that line, as stated by the junior party when he first saw the senior party's device, notwithstanding the testimony of the junior party at the hearing that the senior party's device could not work as stated.

Appeals from the Commissioner of Patents.

Two interference proceedings between Alexander S. Chessin and Emil Klahn. From decisions of the Patent Office, awarding priority in each proceeding to Klahn, Chessin appeals. Affirmed.

Alexander S. Chessin, of New York City, and C. Dudley Shreve, of Washington, D. C., for appellant.

W. P. Preble, of New York City, for appellee.

SMYTH, Chief Justice. These are appeals from decisions in two interferences between the same parties, wherein priority was awarded to Klahn. The inventions relate to improvements in gyro compasses, and are expressed in 17 counts, one in one interference and 16 in the other, which may be reduced to a single issue, stated thus:

Means for transmitting the effect of the earth's rotation to a gyroscope freely suspended at its center of mass.

The gyro compass consists of suitable mechanism for supporting a spinning gyrostat, whereby the axis of rotation of the gyrostat, when placed in the meridian, will maintain such position, and, if rotating with its axis at an angle to the meridian, will precess until such axis coincides with the meridian.

[1, 2] Chessin is the junior party, and has the burden which that fact implies. Blaine v. White, 50 App. D. C. 38, 267 Fed. 340; Grus v. Eynon, 50 App. D. C. 48, 267 Fed. 350. He is a scientist connected with several universities as an instructor. When he met Klahn, the latter was working on a gyrostatic compass, for which he had filed an application for a patent, and Klahn employed him to assist in the work. Chessin, some time after he had met Klahn, wrote that he had examined the Klahn compass, had submitted it to several tests, and found that it did everything which was claimed for it, and, besides, embodied features which were "bound to give it material advantages over every

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

other gyroscopic compass now in existence." There is nothing indicating that at this time Chessin had any definite conception of a gyro compass comprising the construction described in the present issue. If, therefore, said the Examiner of Interferences, the Klahn structure thus commended by Chessin, and which the latter, pursuant to his employment, helped to improve, embodies the issue, Klahn is entitled to prevail.

Chessin says that Klahn did not understand the theory of the compass which he had invented, and that it was necessary for him to explain to Klahn the means for transmission of the rotational impulses of the earth to the gyrostat. The horizontal axis of the Klahn gyroscope was mounted on roller bearings, and Chessin admits that, when he first saw the gyroscope, he believed that through those bearings the rotational impulses of the earth would be transmitted. In accordance with his advice, Klahn, for the purpose of protecting the feature for transmitting the earth's rotation, filed a new application, which was prepared under the supervision of Chessin, the specifications of which say that the horizontal component of the angular velocity of the earth is transmitted through the roller bearings to the gyroscope. Klahn now insists, as he did then, that this statement suggested by Chessin is correct. The Examiners of Interferences ruled with him, and held that in the circumstances Chessin had failed to discharge the burden resting on him to show that Klahn's claim was not sound.

The Examiners in Chief took the position as to counts 1, 2, 3, 9, 10, 15, and 16 that they called for nothing which was not disclosed by Ganot's Physics, and recommended that neither party be given a patent comprising the claims corresponding to those counts. As to the remaining counts they were of the opinion that they were similar in subject-matter to claims embodied in the patent to Klahn, the application for which was pending, as we have said, before Klahn met Chessin, and for these reasons, as well as for others given, affirmed the action of the Examiner of Interferences.

According to the First Assistant Commissioner, Klahn, previous to meeting Chessin, disclosed no evidence that he had constructed a device that was in any way responsive to the earth's rotation, but that, on the contrary, the one which he had disclosed indicated that gravity was the source of the directive force which caused the precession movement of the instrument. He also says that beyond doubt Chessin suggested the use of a form of horizontal bearings that would increase the friction, and that it was he, not Klahn, who advanced the theory that thereby the influence of the earth's rotation would be transmitted to the gyroscope. But none the less he was of the opinion that the counts of the interference all read on the Klahn structure disclosed in the application filed before he had met Chessin. He thought that, if the structure of the applications upon which the parties were then in interference were capable of utilizing an available directive force lying in the earth's rotation, the structure described by Klahn in the application just referred to could also utilize it to a degree at least. He disagreed with Chessin's contention that no force could be transmitted

through the antifriction bearings of Klahn's structure, and, asserting that such force could be transmitted, said:

"The effect of so transmitting forces through the horizontal axle is to make the spinning mass precess. This precession movement is made about the vertical axle, and when friction is eliminated from the bearings of the vertical axle, as in Klahn's machine in question, the precession movement meets with less opposition, and may be instituted with a smaller force. Furthermore, assuming that Klahn started with a machine having antifriction bearings of equal efficiency in the horizontal and vertical axles, when he all but eliminated friction from the vertical axle, he produced a structure wherein there was a relationship between the bearings of the respective horizontal and vertical axles, such that the structure would appear to be in the nature of an equivalent, in so far as transmission of torques through the horizontal axle is concerned, of the one proposed by Chessin, wherein the bearings of the vertical axle were to remain unchanged, but there should be a substitution of friction for antifriction bearings for the horizontal axle."

He reached the conclusion that all the counts of the interference may be read on Klahn's earlier application No. 776,931, upon which a patent had issued to him, and therefore that he was entitled to the award.

Chessin says in this court that it is immaterial what views he expressed some time ago if, as a matter of fact, Klahn's device is incapable, according to the laws of physics, of transmitting the earth's rotational movement, and seeks to show by argument that it is incapable. It is one thing to assert it and quite another to prove it. As we have seen, at least two, if not the three, tribunals of the Patent office are against him. There may be doubt as to whether or not the Board of Examiners expressed any opinion upon the point. Chessin admitted at the bar that the First Assistant Commissioner understood the applicable principles of physics, but urged that he misapplied them. No proof of this was adduced save his own argument, which, though very persuasive, was not convincing—at least not sufficient to overcome the burden resting upon him. As bearing on the point, see Creveling v. Jepson, 47 App. D. C. 597; Blaine v. White, 50 App. D. C. 38, 267 Fed. 340; Reid v. Kitselman, 49 App. D. C. 377, 266 Fed. 255.

We adopt the opinion of the Commissioner, and affirm his decisions. Affirmed.